IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIERA HULSH, formerly known as VIERA WISTEROVA, | ) ) ) | |
| *Petitioner*, | ) ) | No. 19 C 7298 |
| v. | ) ) | Judge Virginia M. Kendall |
| JEREMY HULSH, | ) ) ) | |
| *Respondent*. | ) | |

**MEMORANDUM ORDER AND OPINION**

Before the Court is Petitioner Viera Hulsh's Amended Fee Petition. (Dkt. 248). Petitioner seeks recovery of the attorneys' fees and expenses under the International Child Abduction Remedies Act. She seeks taxable costs under Fed. R. Civ. P. 54 and 28 U.S.C. §1920. This Court previously reviewed the legal framework guiding the award and found that Petitioner is entitled to an award of fees and costs, but found that it could not grant a precise amount as Petitioner had not properly supported her request. (See Dkt. 241). Petitioner has now resubmitted an accounting of her fees and costs. Petitioner requests $406,615.70 in attorneys' fees, $9,692.00 in expenses, and $80,435.60 in taxable costs. For the following reasons, the Court grants Petitioner $239,955 in attorneys' fees and expenses and $25,141.87 in taxable costs.

**I.      Bankruptcy Proceedings**

Respondent Jeremy Hulsh has filed for bankruptcy in the Northern District of Illinois. The Court previously found that Viera Hulsh was entitled to attorneys' fees and expenses under the relevant statutes. (See Dkt. 241). The Court refrained from deciding a precise amount until the bankruptcy court decided whether the fees were subject to an automatic stay. On January 11, 2021,

Judge Goldgar denied in part Viera Hulsh's Motion for Relief from the Automatic Stay. Judge Goldgar wrote:

> To the extent the motion seeks to modify the stay to permit the movants to pursue their fee petition in *Hulsh v. Hulsh*, No. 19 C 7298 (N.D. Ill.), the motion is denied as unnecessary because the stay does not apply. *See* 11 U.S.C. § 362(b)(2)(A)(ii). The movants may liquidate the fees and costs but may not collect them. *Id.* To the extent the motion seeks to modify the stay to permit movant Viera Hulsh to pursue tort claims against the debtor without first obtaining a judgment that the claims are nondischargeable under 11 U.S.C. § 523(c)(1), the motion is denied.

*Jeremy Barock Hulsh*, Case No. 20-16482, Dkt. 32 (Bankr. N.D. Ill., Jan. 11, 2021). The Court can thus take up the issue and decide the specific amount of attorneys' fees owed by Respondent Hulsh. As discussed by Petitioner in her Motion for Attorneys' Fees, fees awarded under ICARA constitute domestic support obligations under the Bankruptcy Code and so are likely nondischargeable as other court confronting this issue have found. *See e.g. In re Weed*, 479 B.R. 533, 544 (Bankr. D. Minn. 2012) (providing thorough analysis of whether ICARA awards constitute "domestic support obligations" and finding that it is nondischargeable); *In re Coe*, 2017 WL 5054312, *3 (Bankr. E.D.Va. Nov. 2, 2017) (applying the reasoning of *In re Weed* to find ICARA awards are nondischargeable). The Court will now determine what precise amount Petitioner Hulsh may recover under ICARA and FRCP 54 and 28 U.S.C. §1920.

## II. Fees under 22 U.S.C. § 9007(b)(3)

The ICARA provides under 22 U.S.C. § 9007(b)(3) that:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

2

Under the Hague Convention, an award of fees and costs serves two purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention" and (2) "to deter such removal or retention." *East Sussex Children Services v. Morris*, 919 F.Supp. 721, 734 (N.D. W. Va. 2013) (citing Hague Convention; Text and Legal Analysis, 51 Fed. Reg. 10494–01, 10511 (Mar. 26, 1986)). Respondent again objects on two grounds: first that petitioner has not submitted reasonable attorneys' fees; and second, that he meets the grounds for ICARA's clearly inappropriate caveat.

The Court notes at the outset that Petitioner has somehow increased her attorneys' fees request from the original August 2020 request. Not to mention, Petitioner requests that she is entitled under ICARA to receive attorneys' fees resulting from the related bankruptcy proceedings, as well as a contingency fee she paid to her lawyers representing her before that court. Even more baffling, Petitioner's attorney, Joy Feinberg, attempts to collect fees she has expended defending *herself* in the bankruptcy proceedings where she was named as a creditor. Petitioner provides no support that she can receive attorneys' fees associated with her bankruptcy proceedings under ICARA and the Court can find no support that would allow this request. As stated above, the purpose of awarding attorneys' fees under ICARA is to "to restore the applicant to the financial position he or she would have been in had there been no removal or retention." *Morris*, 919 F.Supp. at 734. The bankruptcy proceedings are unrelated to the proceedings that were before this Court. The Court declines to award any attorneys' fees stemming out of Petitioner's bankruptcy proceedings and instead will only focus on Petitioner's fees associated with the Hague Convention hearings. *See Saldivar v. Rodela*, 894 F.Supp.2d 916, 938 (W.D. Tex. 2012) (declining to award fees associated with "tasks undertaken after the child had been returned).

A party may seek attorneys' fees under ICARA and a court will determine whether those fees are reasonable using the lodestar method. *Norinder v. Fuentes*, 657 F.3d 526, 536–37 (7th Cir. 2011). The Court first calculates the "lodestar figure" by multiplying "the number of hours reasonably expended on the litigation [ ] by a reasonable hourly rate." *Schlacher v. Law Offices of Phil J. Rotche & Assocs.,* 574 F.3d 852, 856 (7th Cir.2009) *(citing Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983)). This determination may be adjusted based on:

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

*Mathur v. Bd. of Trs. of So. Ill. Univ.*, 317 F.3d 738, 742 n. 1 (7th Cir. 2003). The party requesting fees bears the burden of adducing "satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984).

### i. Calculation of Attorneys' Fees

Petitioner has submitted more support justifying her attorneys' fees. Petitioner has attached billing statements that indicate that each attorney on the case contributed the following hours.

| Attorney | Hours | Rate (per hour) | Total |
| --- | --- | --- | --- |
| Joy Feinberg | 430.65 (376.35 hours office time, 44.3 hours court time). | $600 out of court /$650 in court | $254,605 |
| Reuben Bernick | 209.1 (178.1 hours office time, 31 hours court time). | $400 out of court/$425 in court | $84,415 |
| Jennifer Tier | 26 hours (all in office) | $375 out of court | $9,750 |

4

| | | | |
|---|---|---|---|
| Shannon Luschen | 408.15 (378.65 hours office time; 29.5 court time). | $200 out of court/$250 in court | $89,005 |

The Court notes that there is a major, unexplained discrepancy between the attorneys' fees previously sought which was $362,300 in total for the Hague Convention proceedings.[1] (See Dkt. 241 at 3). The Court includes the previously sought attorneys' fees in the chart below.

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Joy Feinberg | 347.8 (67.8 hours removed, 280 charged)[2] | $600/650 | $188,800 |
| Reuben Bernick | 350 (80 hours deducted, 270 charged) | $400/425 | $126,400 |
| Shannon Luschen | 203.5 | $200/250 | $47,100 |

The purpose of having Petitioner re-submit her fee petition was to attempt to sort through the unsupported Motion she had initially submitted and ascertain what fees were justified. Petitioner now seeks another bite at the apple, including in her petition attorneys that she has never mentioned before and includes work that was not discussed in her earlier Motion. For example, Petitioner never mentioned the work of attorney Jennifer Tier previously. And there is no explanation for the addition of approximately 80 hours to attorney Joy Feinberg's time and for an additional 200 hours to attorney Shannon Luschen's time. It would perversely incentivize litigants to submit unsupported attorneys' fees and then attempt to collect more if the Court gave them another chance. The Court was well within its rights to previously reduce Petitioner's fee petition based on the lack of support but chose not to; instead hoping to fairly award Petitioner her due

---

[1] The Court notes that Petitioner had previously requested $24,096.00 related to her travel, which was unsupported by any receipt or documentation. (Dkt. 241 at 5). Mysteriously, this request has disappeared from the fee petition without explanation.

[2] Petitioner indicates these hours were removed because they were duplicitous.

5

amount. Perhaps Petitioner's attorneys reviewed their records and determined that they had allocated more time to the case than they previously thought. But Petitioner could have and should have submitted this more accurate amount on the first attempt. The Court declines to award almost $100,000 more for Petitioner's inaccurate accounting. Therefore, the Court will only award up to $362,300 in attorneys' fees based on Petitioner's earlier representations to the Court. *See e.g.*, *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999) (explaining that where counsel fails to provide clear explanations of the work completed or the basis for the hourly rates charged, the Court has the discretion to reduce counsel's proposed compensation to an amount that it deems reasonable, in accordance with an appropriate market rate).

Continuing to the traditional analysis, the Court first looks to the reasonableness of Petitioner's request for attorneys' fees. The reasonableness of the time expended by an attorney on behalf of a client depends not only on the total number of hours involved but also on the particular tasks to which the attorney devoted ... her time." *Trustees of Chicago Plastering Inst. Pension Trust v. Cook Plastering Co*., 570 F.3d 890, 905 (7th Cir. 2009). It is not at all unusual for a court to determine that some aspects of an attorney's work were not fruitful, were unnecessary, or merited less time than the attorney devoted to them, and to deny compensation for those portions of the attorney's work." *Id.* at 905; *see also JCW Investments, Inc. v. Novelty, Inc*., 509 F.3d 339, 342–43 (7th Cir. 2007). Petitioner has attached 76 pages of billing statements and time statements that indicate how her attorneys allocated their time. (Dkt. 248-5). These billing statements indicate that work was not duplicated among her attorneys and justifies the work that was conducted. The case involved massive amount of research and took several fast-paced months to fully litigate. This case started in November 2019 and the appeals concluded in August 2020, a heightened pace that placed a great deal of pressure on the attorneys to complete a great amount

6

of work in a short amount of time. Not to mention, the trial itself lasted over a week and was interrupted by the COVID-19 pandemic. In reviewing the billing statements, the Court finds that the attorneys had to complete a substantial amount of research; had to review and analyze numerous documents; were required to draft multiple lengthy motions (*see* Dkt. 248-4 for details on motions); had to prepare for a long deposition with Respondent Hulsh; and had to prepare for a lengthy trial that was interrupted, in part, by the pandemic. The Court finds that Petitioner has sufficiently justified her hours request.

  The next question looks to the billing rates. Generally, the "reasonableness of an attorney's billing rate depends on the experience and qualifications of the professional." *Trustees of Chicago Plastering Inst. Pension Trust*, 570 F.3d at 905. In this instance, the Petitioner has the burden of showing that the fee counsel seeks is proper and "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984); *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir.2009); *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (noting that a fee applicant must prove the market rate for services rendered). The Seventh Circuit has stated its "preference ... to compensate attorneys for the amount that they would have earned from paying clients, i.e., the standard hourly rate." *Mathur v. Board of Trustees of So. Il. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003).

  Petitioner has not met her burden of proving that her fees were reasonable. She has only attached a self-serving affidavit stating that all attorneys' fees were reasonable given their experience. *See Uphoff*, 176 F.3d at 409 (affirming the district court's reduction of the lawyers'

proposed fee by where the lawyers provided nothing but self-serving affidavits in support of their proposed rates). Generally, an attorney seeking to prove her fees were reasonable cites to cases pertaining to a similar subject matter where attorneys' fees were granted to show their market rate. Petitioner has not cited to any cases. However, Respondent cites to a case from the Southern District of New York where litigation is similar to Chicago, that stated, "courts in this District have not awarded more than $425 per hour in a Hague Convention case." *Nissim v. Kirsh*, No. 1:18-CV-11520 (ALC), 2020 WL 3496988, at *3 (S.D.N.Y. June 29, 2020). Here, attorney Joy Feinberg bills $600/hr for her office work and $650/hr for her time in court. She has been practicing law for over 40 years. (See Dkt. 248-5 at 2). Attorney Reuben Bernick, who is only described as a senior attorney, bills $400/hr for his office work and $425/hr for his time in court. Attorney Jennifer Tier, a partner at the firm, bills $375/hr for her office work. Attorney Shannon Luschen is an associate attorney who bills $200/hr for her office work and $250/hr for her in court work. The Court, based off the Court's lead in *Nissim*, will thus cap attorney Feinberg's fees at $425/hr for both her work in and out of court, which is a generous amount. The Court will commensurately lower the remaining attorneys' fees in line with this.[3][4]

| Attorney | Hours | Rate (per hour) | Total |
|---|---|---|---|
| Joy Feinberg | 420.65 (376.35 hours office time, 44.3 hours court time). | $425 | $178,776.25 |
| Reuben Bernick | 209.1 (178.1 hours office time, 31 hours court time). | $280 | $58,548 |
| Jennifer Tier | 26 hours (all in office) | $262 | $6,812 |

---

[3] The Court found these rates by lowering the indicated rate by .3. The Court found this by dividing the requested out-of-court rates for attorney Feinberg, the most senior attorney on the team, by 425, which was the maximum amount in *Nissim*.

[4] The Court notes that in Nissim, the Court looked at the amount of experience that each attorney associated with the case had. The Court cannot make a similar determination as Petitioner nowhere provides that information.

| Shannon Luschen | 408.15 (378.65 hours office time; 29.5 court time). | $175 | $71,426.25 |

Based upon the above, the Court will award Petitioner $315,562.50 in attorneys' fees under ICARA.

Petitioner also requests $9,692 in expenses related to filing fees, court reporter expenses and private detective fees. She further requests an additional $4,377.5 in connection with a mediation shortly after the Court ordered Petitioner's children be returned to Slovakia. Finally, she requests $24,372.50 for work associated with the fee petition. She also believes her attorneys' will incur an additional $20,000 in work due to the fee petition "given Jeremy's extreme litigiousness." The Court will not award expenses here as she seeks duplicative expenses under taxable costs. Not to mention, after digging through all the billing statements, the Court can only find about $3,500 of justified costs for filing fees, court reporter expenses, and private detective fees. The Courtgrants the $4,377.5 in connection with the mediation.

However, the Court does not award expenses in relation to the fee petitions as these were incurred after the children were returned and the purpose of ICARA is to recover fees spent in returning the children. *See Saldivar*, 894 F.Supp.2d 938 (declining to award fees associated with "tasks undertaken after the child had been returned). Not to mention, Petitioner's request for $20,000 in future expenses is complete conjecture. Therefore, in total, Petitioner may recover $319, 940 under ICARA.

    **B.**    **Clearly Inappropriate**

As discussed by this Court previously, ICARA's presumption of an award of expenses to a prevailing petitioner is "subject to a broad caveat denoted by the words, 'clearly inappropriate.'"

9

*Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004). Circuits that have examined this caveat have found "the equitable nature of cost awards," so that a prevailing petitioner's presumptive entitlement to an award of expenses is "subject to the application of equitable principles by the district court." *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 79 (2d Cir. 2016) (discussing *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013). "Absent any statutory guidance to the contrary, the appropriateness of such costs depends on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'" *Id*. (citations omitted).

Reasons for denying or reducing attorneys' fees include the losing party not being able to afford fees and where the prevailing party's attorney failed to appropriately account for fees, *Morris*, 919 F. Supp. at 734; where the losing party had a reasonable basis to believe that removal of children was appropriate, *Ozatlin*, 708 F.3d 375; where the losing party had little savings and the fact that most of the losing party's expenses went towards childcare, *In re Application of Stead v. Menduno*, 77 F. Supp.3d 1029, 1037–38 (D. Co. 2014); where the prevailing party contributed to the contentious relationship and abused respondent, *Souratgar*, 818 F.3d at 79; and combinations of the prevailing party contributing to the enmity and the other party not being able to afford fees, *Whallon v. Lynn*, No. Civ.A. 00–11009–RWZ, 2003 WL 1906174, at *4 (D. Mass. Apr. 18, 2003).

A court looking at the clearly inappropriate caveat must therefore sift through the facts. While courts looking at the caveat have made a number of exceptions based on the facts in front of it, two main considerations have emerged: (1) "whether a fee award would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child";

10

(2) "whether a respondent had a good faith belief that her actions in removing or retaining a child were legal or justified." *Rath v. Marcoski*, 898 F.3d 1306, 1311 (11th Cir. 2018).[5]

The Court therefore must first determine whether an award of attorneys' fees would be clearly inappropriate. Respondent indicates that he cannot afford the attorneys' fees sought here and that he has recently filed for bankruptcy. (Dkt 255 at 22). In particular, Respondent argues that he does not have a job and that being forced to cover attorneys' fees would inhibit his ability to care for his children, especially in consideration of the fact that he will likely have to return to Slovakia to see his children. (*Id.*). Respondent states that he has approximately $4,100 in assets. (*Id.*). The Court previously noted that neither Respondent nor Petitioner had an ability to pay for the monitoring required and were borrowing money in order to fund the litigation. Tr. 1/13/20, pp. 3, 8. Further, the Court does not wish to impose a greater burden on Respondent when he will be required to pay child support. (Dkt. 255 at 22). Petitioner argues that the Court should ignore the father's financial situation as Respondent's family assisted in paying for his own attorneys' fees.

The Court further notes that Respondent does not argue he had a good faith basis for believing the removal of his children was reasonable. Respondent did not deny that he abducted his children, but later argued at trial that he met two treaty exceptions that would have permitted the Court to decline to return the children to Slovakia. (Dkt. 177 at 2). It would be difficult to argue a good faith basis when Respondent has already acknowledged that he abducted his children.

As always, the Court's main concern is the care of the children. It is undisputed that Petitioner will be the primary caregiver for the children in Slovakia. By requiring Respondent to

---

[5] In this circuit, the Seventh Circuit has acknowledged that financial hardship is a factor other courts have considered, but ultimately found it did not apply to the case in front of it. *Norinder v. Fuentes*, 657 F.3d 526, 536–37 (7th Cir. 2011).

11

pay a substantial amount of the attorneys' fees, the Court hopes to alleviate Petitioner's burden while fulfilling the policy goals of deterring others from removing children without the consent of the other party. However, it is undisputed that Respondent is undergoing bankruptcy proceedings and has few assets. Petitioner urges this Court to consider that Respondent's family is assisting him financially with his legal fees which is undisputed. The Court seeks to find an amount that will adequately deter Respondent and others from absconding with their children while also acknowledging that the Respondent has few assets to his name. As such, the Court will lower the attorneys' fees further by one-fourth to $239,955. Such an amount will ensure that Petitioner may adequately care for her children while still meeting the policy goals of ICARA.

### III. Fees and Costs

Petitioner requests $80,435.60 in taxable costs under Rule 54 and 28 U.S.C. § 1920. Again, inexplicably, Petitioner has raised her taxable costs from her initial request of $73,755.26. (See Dkt. 233). As the prevailing party, Petitioner also seeks to recover, and is entitled to recover, an award of costs under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920. Rule 54 provides, in pertinent part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Pursuant to 28 U.S.C. § 1920, the following costs may be taxed:

> (1) Fees of the clerk or marshal;
> (2) Fees of the printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title

28 U.S.C. § 1920.

Only where it is immediately apparent that the costs were necessary and appropriate will the Court grant them due to the "narrow scope of taxable costs." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 572 (2012). "Taxable costs are limited to relatively minor, incidental expenses as is evident from § 1920, which lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts. Indeed, the assessment of costs most often is merely a clerical matter that can be done by the court clerk." *Id.* (citations omitted). Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). That presumption does not, however, relieve the prevailing party of the burden of establishing that potentially recoverable costs it incurred were reasonable and necessary. *See e.g. Telular Corp. v. Mentor Graphics Corp.*, No. 01 C 431, 2006 WL 1722375 at *1 (N.D. Ill. June 16, 2006). The district court's determination whether particular costs are reasonable and necessary is given considerable deference. *SK Hand Tool Corp. v. Dresser Industries, Inc.*, 852 F.2d 936, 943 (7th Cir. 1988).

As discussed above, Petitioner sought to recover some of the expenses under ICARA and then requested duplicative payments under § 1920. The Court declined to consider these costs above but will consider them here. Petitioner seeks to recover the following costs as detailed at Dkt. 248-14. The Court notes that Petitioner, while attaching more receipts, has not supported a number of her requests, leaving it to the Court to determine whether the costs are appropriate under § 1920. The Court provided Petitioner clear guidance in its October 30, 2020 Order as to how to

13

fix her fee petition before allowing her to refile (which was generous and not required). The Court stated:

> Petitioner has attached some receipts (Dkt. 233-1), however she does not attempt to explain the costs or whether the expenses were necessary to the litigation. The Court declines to sift through the jumble of disorganized receipts to determine what is necessary or not. Should Petitioner wish to collect these costs, she must provide further analysis and support to show that they were both reasonable and necessary.

Dkt. 241 at 8. However, Petitioner has failed to heed this advice.[6] Petitioner only attached some receipts, but there are many that are still missing. Not to mention, Petitioner failed to justify these costs. Once again, Petitioner acknowledged the case law guiding § 1920 in her Motion, but somehow failed to address whether her costs were reasonable or necessary in her second attempt. The Court already took the unusual step of giving Petitioner another chance to fix her Motion; that Petitioner has not followed this Court's instruction is lamentable. Therefore, the Court will review the attached receipts and Motion and grant costs only where it is immediately apparent that they were reasonable and necessary.

### A. Petitioner's Requested Taxable Costs

Petitioner's requests are as follows:

- Filing fee $400.00 (Request N-1)

- Flight for Mother $1,866.00 (Request N-2)

- Martin Cap translations $13,575.00 (Exhibit N-3)

- Flights and accommodations for Dr. Anna Niku $1,547.74 (flight) and $1,467.00 (accommodation) (Request N-4)

---

[6] Respondent correctly acknowledges that in addition to the above failings, Petitioner has failed to follow Local Rule 54.3. However, as the Court discussed in its previous Order, this is not a reason to completely deny Petitioner's request. *See Jones v. Ameriquest Mortg. Co.*, 05 C 0432, 2008 WL 4686152, *1–7 (N.D. Ill. May 19, 2008) (thorough discussion of Local Rule 54.3 and denying dismissal of petition for costs).

- Dr. Rappaport retainer $5,000.00 and evaluation/report $14,041.87 (Request N-5)
- Dr. Anna Niku "flights/hotel/Airbnb/report" $8,200.00 (Request N-6)
- Peter Erdos expert report ($2,800.00) (Request N-7)
- (Second) Martin Cap translations $16,011.00 (Request N-8)
- Invoice for deposition transcript of Father $1,452.75 (Request N-9)
- MSI Detective Services for location and service of process $1,465.00 (Request N-10)
- Court transcripts for trial $721.00 (Request N-11)
- Dr. Rappaport trial retainer $5,150.00 (Request N-12)
- Court reporter payment $504.00 (Request N-13)
- Flights from Chicago to Baltimore for Mother and children $446.94 (Request N-14)
- Retainer fee to bankruptcy attorney for Feinberg Sharma $2,500.00 (Request N-15)
- Federal Express fee to return original documents $280.61 (Request N-16)
- Payment to bankruptcy attorney for Feinberg Sharma $1,374.65 (Request N-17)
- Payment to bankruptcy attorney for Feinberg Sharma $1,631.95 (Request N-18)

1. **Petitioner's Requests for Payment in Unrelated Bankruptcy Proceedings**

The Court can easily dispense with several of these payments as inappropriate under the statute. Petitioner's requests for payment relating to the bankruptcy proceedings are clearly unrelated and unrecoverable in the instant actions. Requests N-15, N-17, and N-18 are denied.

2. **Filing Fees and Court Reporter Fees**

The costs associated with the filing fees and court reporter fees are appropriate under the statute. However, the Court notes that in her prior request, Petitioner sought $424.80 and $504.00 in payments to the Court reporter. Petitioner now seeks $504 and $721 for the Court reporter. The Court notes that the request for $504 is adequately supported (see also Dkt. 348-5 at 50), but at

15

Dkt. 248-5 at p. 35 & p. 40, this $721 payment on March 3, 2020 was only an estimated cost for the transcript. Later, at Dkt. 248-5 at p. 51, Petitioner's charges indicate that she received a $275.20 refund from the Court Reporter from the $721 deposit. Therefore, the Court will reduce Petitioner's court reporter fees to $504 and $446.

### 3. Petitioner's Flights

The Court cannot find support that Petitioner's flights are recoverable costs under § 1920 and Petitioner has provided none. Not to mention, Petitioner's flight to Baltimore appears wholly discretionary. Therefore, Requests N-2, and N-14 are denied.

### 4. Written Translations

Petitioner requests $13,575.00 (see Request N-3) for December 2019 translations and $16,011.00 (Request N-8) for February 2020 translations provided by Martin Cap. Dkt. 248-14 indicates that the total for translations was €26,336.36 or $31,413.62, which is more than the $29,586 Petitioner requests at N-3 and N-8. The Court cannot discern for what purpose the translator served but ascertains that it was for written translation of court documents originally in Slovak. In the end, the difference is immaterial as Petitioner cannot recover for written translations. *See Taniguchi*, 566 U.S. at 574–75 (2012).

### 5. Expert Witnesses

Petitioner requests costs related to two experts she retained: Dr. Anna Niku and Dr. Peter Erdos. Petitioner seeks $1,547.75 for a flight and $1,467 in accommodation for Dr. Niku from December 17, 2019 to January 9, 2020 at Request N-4. She further requests $8,200 for Dr. Niku in "flights/hotel/Airbnb/report" at Request N-6. Expert fees are not recoverable under Rule 54(d) or 28 U.S.C. § 1920, to the extent that they exceed 28 U.S.C. § 1821(b)'s cap on witness fees of $40 per day. *See Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877 (2019) ("In defining

what expenses qualify as 'costs,' §§ 1821 and 1920 [like Rule 54(d)] do not include expert witness fees.") (citing *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987)). This is to say that unless the expert is court appointed, *see* 28 U.S.C. § 1920(6), the only fees that are recoverable as witness fees under § 1920(3) are those allowed by statute for a witness' attendance at court or a deposition. *See* 28 U.S.C. § 1821. This amounts to $40 per day, plus subsistence. *Portman v. Andrews*, 249 F.R.D. 279, 282 (N.D. Ill. 2007).

The only supported request that Petitioner makes for Dr. Niku is a roundtrip flight from Vienna, Austria to Chicago, Illinois from December 17, 2019 to December 26, 2019. (Dkt. 248-14 at 8). Other than that, there are no receipts attached and no discussion as to whether Dr. Niku's costs were reasonable. Petitioner does not even explain how she arrived at the dates for Dr. Niku's stay when there is nothing submitted that shows she was in Chicago, Illinois for the trial. The one flight receipt attached for Dr. Niku indicates she flew back to Vienna, Austria on December 26, 2019, so the Court cannot say this flight was incurred in relation to her attendance at trial. Petitioner does not request the $40 appearance fee granted to witnesses who appear at trial, so the Court will not grant it. This request is wholly denied.

Petitioner requests $2,800 for an expert report at Request N-7. Costs submitted in connection to an expert report are not recoverable under the statute. *See e.g. Vukadinovich v. Hanover Community School Corp., et al.*, No. 2:13-CV-144-PPS, 2017 WL 242985, *2 (N.D. Ind. Jan. 20, 2017).

Petitioner requests costs associated with the court-appointed expert Dr. Sol Rappaport. Petitioner attaches receipts to support her request for $5,000.00 for Dr. Rappaport's retainer and $14,041.87 for his evaluation/report (Request N-5), with an additional $5,150 for Dr. Rappaport's trial retainer. (Request N-12). Respondent does not dispute that these are recoverable costs and

17

indeed they are under the statute; but only claims that they should not be recoverable because Dr. Rappaport was not unbiased. He does not support this request with any case law. As the fees associated with Dr. Rappaport are recoverable under § 1920, the Court grants this request.

### 6. Deposition Transcript

Petitioner requests $1,452.75 for the deposition transcript of Respondent at Request N-9. First, as an initial matter, the receipt attached only supports a request for $360 for the deposition transcript of Jeremy Hulsh. (Dkt. 248-14 at 18). It appears that $1,092.75 is a transcript for the deposition of an unrelated party in the case of *Wilhelm v. Wilhelm*. With regard to deposition transcripts, it is well established that "the expenses of discovery depositions shown to be reasonably necessary to the case are recoverable even if the depositions are not used as evidence at trial." *State of Ill. v. Sangamo Const. Co.*, 657 F.2d 855, 867 (7th Cir. 1981). The "introduction of a deposition at trial is not a prerequisite for finding that it was necessary to take the deposition," as long as the deposition was not "purely investigative in nature." *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir. 1985), overruled on other grounds by *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258 (7th Cir. 1989). Petitioner has not supported her request whatsoever. The Court has no means of knowing whether the deposition of Respondent was necessary for trial and was not purely investigatory in nature. This request is therefore denied in whole.

### 7. Investigator Fees

Petitioner requests $1,465.00 for MSI Detective Services for "attempts to locate Jeremy and the children after abduction" at Request N-10. The receipt lists "stakeout, mileage, and parking" as part of its fees. (See Dkt. 248-14 at 28). There is nothing in the statute that allows for costs to private investigators. Respondent has provided case law that indicates that this cost is not recoverable under the statute. *See e.g. Myres v. Hooten*, No. CIV. A. 1:03-CV-104, 2007 WL

2963915, at *3 (E.D. Tenn. Oct. 9, 2007) ("28 U.S.C. § 1920 makes no provision for fees incurred to pay private investigators…"); *see also Associated Gen. Contractors of Am. v. Stokes*, No. 1:11CV795 GBL/TRJ, 2012 WL 7782745, at *11 (E.D. Va. Nov. 20, 2012), report and recommendation adopted, No. 1:11-CV-795 GBL/TRJ, 2013 WL 1155512 25 (E.D. Va. Mar. 19, 2013) (noting that private investigator's charges "are not contemplated as allowable expenses under 28 U.S.C. § 1920"). This request is denied.

8. Shipping Fees

Finally, Petitioner requests $280.61 for a "Federal Express fee to return original documents" at Request N-16. However, delivery or shipping costs "have generally been deemed ordinary business expenses that may not be recovered by the prevailing party." *Menasha Corp. v. News America Marketing Instore, Inc.*, No. 00 C 1895, 2003 WL 21788989, *3 (N.D. Ill. July 31, 2003) (citing *Rodgers v. City of Chicago*, No. 00 C 2227, 2002 WL 423723 at *2 (N.D. Ill. Mar.15, 2002)); *see also Stark v. PPM America, Inc*., No. 01 C 1494, 2003 WL 21223268 at *8 (N.D. Ill. May 23, 2003) (citing *Wahl v. Carrier Mfg. Co., Inc*., 511 F.2d 209, 217 (7th Cir.1975)) (denying request for delivery services and postage because those expenditures were not expressly provided for in §1920). This request is denied in whole as it is an ordinary business expense and is unjustified.

B. Whether Respondent's Indigency Rebuts the Presumption of Costs

Respondent argues that he is indigent and that therefore awarding Petitioner her taxable costs is inappropriate. Rule 54(d) gives district courts the discretion to not assess costs against the losing party. *Rivera v. City of Chi*., 469 F.3d 631, 634 (7th Cir. 2006). One reason courts consider in denying costs is a plaintiff's indigency. *Id*. (citing *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003)). Despite this, the presumption that costs will be awarded is a strong one. *U.S.*

*Neurosurgical, Inc. v. City of Chi.*, 572 F.3d 325, 333 (7th Cir. 2009). Denial of costs for indigency is only allowed in limited circumstances. A party who fails to establish he is incapable of paying court-imposed costs now "or in the future" is not entitled to avoid court-assessed costs via the indigency exception. *McGill v. Faulkner*, 18 F.3d 456, 459–60 (7th Cir. 1994). The presumption is so strong that in *McGill*, despite the court finding plaintiff was presently indigent did not prevent costs from being assessed against him, since the court was "not convinced that [the plaintiff] will not ever be able to pay the order imposing costs." *Id*.

Respondent argues that he has few assets now, but the Court is unconvinced he will never be able to pay the fees. Therefore, the Court will allow Petitioner to recover her reasonable and justifiable costs in the amount of $25,141.87.

## CONCLUSION

After two attempts to allow Petitioner to submit justifiable and supported attorneys' fees and costs and reviewing the supported documentation, the Court grants Petitioner $239,955 in attorneys' fees and expenses and $25,141.87 in taxable costs.

_____
Virginia M. Kendall
United States District Judge

Date: March 15, 2021